**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**SHARON BOUDREAUX**                                       **PLAINTIFF**

**VS.**                                 **NO.  5:04 CV 189 JMM**

**ARKANSAS DEPARTMENT OF WORKFORCE
EDUCATION STEVE FRANKS, DIRECTOR, et al.**          **DEFENDANT**

<u>**ORDER**</u>

Pending before the Court is Defendants' Motion for Summary Judgment.  Plaintiff filed this employment discrimination suit alleging Defendants denied her promotion and educational administrative certifications in violation of Title VII of the Civil Rights Act of 1964 (as amended); 42 U.S.C. §2000e *et seq*.; 42 U.S.C. §1981 as amended; 42 U.S.C. §1983, as to the individual defendants; 42 U.S.C. §1985, as to the individual defendants; and Amendment 14 of the United States Constitution, as to the individual defendants.  Further, Plaintiff alleges that Defendants are in violation of the Arkansas Civil Rights Act of 1993, A.C.A. §16-123-101 *et seq*.  Defendants filed this Motion for Summary Judgment alleging that Plaintiff has failed to establish a *prima facie* case of discrimination under Title VII and §1983.  Defendants argue that because her §1983 claim will not survive, Plaintiff's claim under §1981 must fail for the same reasons.  Defendants also claim that the §1985 claim must fail due to the intracorporate conspiracy doctrine and/or because Plaintiff cannot prove a conspiracy.  Finally, Defendants argue that the federal court should not retain jurisdiction when no federal claims remain.   The Court hereby grants the Defendants' Motion for Summary Judgment (#17).

1

**STATEMENT OF THE CASE**

Plaintiff Boudreaux is an African-American female who works at the Varner Unit of the Arkansas Department of Corrections for the Riverside Vocational Technical School (RVTS), as a computer science technology teacher.   Plaintiff  has been employed there for nine years. She holds a master's degree in vocational education and has at least 25 years of educational experience.   RVTS provides instruction to enable offenders to be employment ready with entry-level job skills upon their return to free society.

The Arkansas Department of Workforce Education (DWE) is charged with regulating vocational programs in high schools, secondary area centers, and post-secondary technical institutes.  RVTS is one of the three post-secondary technical institutes located throughout the State of Arkansas.  RVTS has campuses at the Newport and Tucker corrections facilities also. The parties agree that the Director of RVTS at the Varner Unit supervises the three campuses and the Assistant Director at the three individual units run the day to day operations of the facilities.

The Office of Personnel Management (OPM) has the responsibility of administering the state's personnel system and establishing necessary policies, procedures and regulations to ensure system uniformity.   OPM has established personnel policies and regulations regarding payroll and compensation.  Under section 220.6.3 of the OPM Policy and Procedures Manual, "employees who transfer from an unclassified position to a classified position will have their rate of pay fixed at a rate within the grade for the new classification which does not exceed the salary previously earned, up to the maximum salary authorized for the position."

Plaintiff claims that she qualified by taking courses of study for certification to be a Post

2

Secondary Vocational Administrator and Post Secondary Assistant Director as of December,

2002.  When she applied for the certifications that correspond to the courses she completed, she

was informed that the designations of Post Secondary Vocational Administrator (303) and Post

Secondary Assistant Director (304) would not be given to her as a "new regime of rules" was

established by DWE. See *Complaint* p. 7.   Defendants allege that a new endorsement designated

as Career and Technical Administrator (415) covered both the 303 and the 304 designations, and

that Plaintiff was given the 415 endorsement.  Plaintiff alleges that she was denied these

designations on her certificate by Director Lee Griffith of DWE, who knew that Director Tom

Knight of RVTS was about to retire, and the endorsements would have made her eligible to

replace him.  *Id.*  She claims that the new requirements established in January 2003,  should not

apply to her, as she had accomplished all that was required as of December 31, 2002.[1]  Finally,

she states that she was in fact granted the 304 endorsement after the new endorsement was in

place, which proves that if 415 were intended as a replacement, she would not have received the

304 endorsement.

Plaintiff claims that the RVTS director position at the Varner Unit became available on

May 21, 2003, and the assistant director position at the Tucker Unit campus became available on

April 6, 2003.  Plaintiff claims she was "well qualified" for either position.  *Id.*  Plaintiff was

interviewed for the Directorship.  The parties agree to the facts involved in the interviewing

process, but Plaintiff denies that she was given a fair interview.  Further, she claims the man who

---

[1]The date that the policy exchanging the 415 designation for the 303/304 designations is cited in some places as January 2002, and others as January 2003.  Whatever the date, Plaintiff's claims remain that she had obtained her credentials for the 303/304 designations before the policy change to 415.

was ultimately hired for the Directorship should never have been interviewed as he was not qualified based upon the job specifications and his qualifications.

Mr. Joseph Kelnhofer was hired as Director of the Varner Unit.  According to the application for employment attached as Exhibit 12 to Defendants' Motion for Summary Judgment, Mr. Kelnhofer has a Masters Degree in Education Administration, and has held two jobs as Principal and one job as Program Administrator for the Department of Human Services. Immediately prior to being hired as Director at the Varner Unit for RVTS, Kelnhofer served as principal of the Department of Correction School District.  He served as principal at the Pine Bluff complex, as well as at the Varner Unit.  Plaintiff admits that she has never served as an administrator in the past.

Plaintiff was offered the position of Assistant Director at the Tucker Unit.  However, Plaintiff claims that because she would have been working more days for the same amount of pay, this would amount to a  reduction in  pay.  Further, she would be on probation for one (1) year.  Therefore, she refused the offer.  Several months later, Plaintiff was asked if she would like to be considered for this position again, and again she refused because she did not agree with the terms of employment.   As a state employee, Plaintiff holds an unclassified position.  The Assistant Director's position is a classified position.  Therefore, OPM section 220.6.3 as applied to her in this case does not allow a pay increase for her to move from unclassified teacher to classified assistant director.  She alleges that these terms were not inflicted upon the white male who eventually received the job.   She alleges that he was given an enhanced salary as being "well qualified" for the position, an enhancement not offered to her because she was black and female. See *Complaint*, p. 9, par. 44.

## STATEMENT OF LAW

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. *Iowa Coal Min. Co. v. Monroe County*, 257 F.3d 846, 852 (8th Cir. 2001); Fed. R. Vic. P. 56 (c). The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The burden is on the moving party to show that the record does not disclose a genuine dispute on a material fact. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F3d 399 (8th Cir. 1995).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). "Summary judgment should be cautiously granted in discrimination cases because such cases often depend on inferences rather than on direct evidence." *Bradley v. Widnall*, 232 F3d 626, 630-31 (8th Cir. 2000) (citing *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994). See also *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151 (8th Cir. 1999). However, "there is no "discrimination case exception" to the application of Fed. R. Civ. P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999).

In establishing a *prima facie* case of race discrimination in a failure-to-promote case under Title VII, plaintiff must show: (1) he is within the protected class; (2) he was qualified and

applied for a promotion to an available position; (3) he was rejected; and (4) a similarly-situated candidate, not part of the protected group, was hired for the position instead. *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005),(citing *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996)).   The same framework is used in establishing a *prima facie* case for disparate treatment under Title VII.  Plaintiff must show: (1) he is within the protected class; (2) he has met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) non-members of his class were treated differently. *Jones v. Reliant Energy-Arkla,* 336 F.3d 689 (8th Cir. 2003).

Once the *prima facie* case of discrimination has been met, the burden of production shifts to the defendant to show that it had a legitimate, nondiscriminatory reason for its actions. *Shannon, Supra.*, [citing *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 111 (8th Cir. 2001)(citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed. 2d 407 (1993))].  If this burden is met, the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination. *Id*.  The burden of persuasion remains with the plaintiff. *St. Mary's*, 509 U.S. at 507.

To succeed in her 42 U.S.C. §1983 claim against the individual Defendants, Plaintiff must show intentional gender discrimination.  *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003), citing (*Texas Dep't. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-56, 101 S.Ct. 1089, 67 L.Ed.2d (1981)).  Where no direct evidence of gender discrimination exists, "we apply the McDonnell Douglas Burden-shifting analysis to section 1983 employment discrimination claims as a way to establish intentional discrimination." *Id*.  Therefore, the *Pope*

framework for analyzing the case is applied.  *Id*., citing (*Ross v. Kansas City Power & Light Co.* , 293 F.3d 1041, 1046 (8th Cir. 2002)).

The intracorporate conspiracy doctrine allows corporate agents acting within the scope of their employment to be shielded from constituting a conspiracy under 42 U.S.C. §1985.  *Meyers v. Starke*, 420 F.3d 738, 742 (8th Cir. 2005), citing (Cross v. General Motors Corp., 721 F.2d 1152, 1156 (8th Cir. 1983)).  The Eighth Circuit Court of Appeals extended the intracorporate conspiracy doctrine to governmental entities. *Id.*, *See Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985).

## ANALYSIS

The Plaintiff alleges the Defendants are responsible for three discriminatory acts against her.  In the first instance, Plaintiff alleges she was denied the endorsements on her teaching certificate necessary for her to be promoted .  Second, she was denied the position of Director of the Varner Unit because of her race and gender, and the position went to a white male.  Third, she was offered the assistant directorship at the Tucker Unit twice, but both offers were a "ruse created for the sole purpose of creating a paper trail showing apparent lack of discriminatory animus on the part of those doing the hiring."  *Complaint, par. 43.*  Therefore, she refused those offers.

In her allegation regarding the endorsements to her teaching certificate, Plaintiff claims that she is entitled to the 303 and 304 endorsements, even though Defendants claim that the new 415 endorsement encompasses these two, and she has received this endorsement.  In her deposition, Plaintiff admits that she knows of no one who applied after January 1, 2003, for the 303 and 304 endorsements that received them.  See *Ex. A to Defendants' Motion for Summary*

*Judgment*, p. 44-45.  This negates any claim that non-members of her class were treated differently as to the endorsements.  Therefore, the Plaintiff has failed to establish a *prima facie* case of discrimination under the *Jones* framework.

For each failure to promote allegation, Plaintiff must show that she is within a protected class; that she was qualified and applied for a promotion to an available position; she was rejected; and a similarly situated candidate, not part of the protected group, was hired for the position instead.  *Pope, Supra*.  Applying the facts to this framework, the Court finds that she is within a protected class and she was qualified for the positions for which she applied.  However, the Court is hard pressed to find that she was rejected, except for the position of Director, or that similarly situated  non-members of her class were hired.

Plaintiff applied for the Assistant Director position at the Tucker Unit in April, 2003.  She was interviewed for the position and offered the job.  However, she refused the job offer, citing the salary provisions and the probationary period.  In this instance, she was not rejected, but instead, offered the job.  Even though she may not like the terms under which the job was offered, the job was in fact offered, and she was therefore not rejected.

However, assuming that the Plaintiff could establish a *prima facie* case for failure to promote based upon the salary and probationary terms of the offer, the Defendants have shown a nondiscriminatory justification for their offer.  The OPM section 220.6.3  provides that employees who transfer from an unclassified position to a classified position will have their pay fixed at a rate within the grade for the new classification that does not exceed the salary previously earned.  The burden then shifts to the Plaintiff to show that their reason was a pretext for discrimination.   Plaintiff admits in her deposition that she does not know of anyone who

worked for Workforce Education that was being moved from an unclassified to a classified job that this section did not apply. See Ex. A, p. 83-84, *Defendants' Motion for Summary Judgment*. Because the regulation was applied to everyone, Plaintiff cannot meet the burden.   While the regulation may seem unreasonable, it is not discriminatory as applied.

Plaintiff claims that the position of Director for the Varner Unit was denied her based upon her race and gender.  Applying the facts to the *Pope* framework, Plaintiff has established she is in the protected class and was qualified for the position.  Plaintiff was rejected for this position in favor of Kelhnofer.  However, Kelhnofer was more qualified than Plaintiff.  He had experience as an administrator in at least three jobs in his past.  Plaintiff did not have any administrative experience.  Therefore, the fourth prong in establishing the *prima facie* case has not been met - the two applicants were not similarly situated in that Kelhnofer had more experience than Plaintiff.

### CONCLUSION

The Court finds that there was no disparate treatment regarding the endorsements to Plaintiff's teaching certificate, and therefore, Plaintiff failed in establishing her *prima facie* case for discrimination.   Also, Plaintiff failed to address Defendants' argument that the endorsement denial challenge is barred because Plaintiff failed to exhaust her administrative remedies on this claim prior to bringing suit.  The Court finds that Plaintiff filed her EEOC charge on October 23, 2003, over eight months after February 19, 2003, which was the date Plaintiff was notified she would not be receiving the endorsements she requested.  Plaintiff's claim is therefore barred under Title VII.

The Court finds that Plaintiff failed to meet her burden of proof in her failure to promote claim regarding the director's position and the assistant director's position.  Therefore, Plaintiff's claims based upon race and gender discrimination are denied.   Plaintiff's 42 U.S.C. § 1983 claims are denied based upon the same analysis used for her Title VII claims as outlined above. Plaintiff's claim under 42 U.S.C. §1981 must fail for the same reason.  The intracorporate conspiracy doctrine prevents Plaintiff's claims against the individuals under 42 U.S.C. §1985, as those named work for a government entity.

Plaintiff seeks punitive damages against the individually named Defendants.   The Plaintiff's request for punitive damages is denied, as Plaintiff failed to establish a *prima facie* case against  Defendants for disparate treatment, race or gender discrimination.

Because the Court dismisses all federal law claims, the Court declines to exercise jurisdiction over the state claims  under 28 U.S.C. §1367(c)(3, and these claims are dismissed without prejudice.  Therefore, the Defendants' Motion for Summary Judgment is granted (#17).

**IT IS SO ORDERED this _____ day of October, 2005.**


_____
**James M. Moody**
**United States District Judge**

10